# Exhibit A

STAR-
TELEGRAM

# TV STAR

## FEBRUARY 9 - FEBRUARY 15

# LOVE'S DEADLY TRIANGLE

## The Texas Cadet Murder

HOLLY MARIE COMBS    DAVID LIPPER    CASSIDY

# SWEARING

ALLEGIANCE

A Solemn Promise.
A Fatal Consequence.




FREMANTLE

"YOUNG LOVE SEALED IN BLOOD...
POWERFUL, CHILLING." —PEOPLE

# A True Story of
# Teen Love and
# Deadly Revenge

Try Prime

Departments ▾    Your Amazon.com    Today's Deals    Gift Cards & Registry    Hello, Sign in    Your Account ▾    Try Prime ▾    Lists ▾    0 Cart

Books    Advanced Search    New Releases    Best Sellers    The New York Times Best Sellers    Children's Books    Textbooks    Textbook Rentals    Sell Us Your Books

Blind Love: The True Story Of The Texas Cadet Murder and over one million other books are available for **Amazon Kindle**. Learn more



Look Inside ↓

See this image

# Blind Love : The True Story of the Texas Cadet Murders Mass Market

Paperback – January 15, 1998
by Peter Meyer    (Author)

23 customer reviews

See all 3 formats and...

| Kindle |
| $7.99 |

Read with Our Free App

A handsome overach...
A beautiful honors st...
Together they would...

A Teenage Love Pac...

Outside a small Texas town by the side of the road, high school sophomore beauty Adrianne Jones lay with her skull bashed in and two bullets in her head. She had

Read more



**In the Barren Ground**
Rookie cop Tana Larsson must track a killer—but can she survive the wild and frozen dark? Learn More

Share    <Embed>

Buy Used                    $0.01
+ $3.99 shipping
Used: Good | Details
Sold by Clean Earth Books

Support your favorite charity

**amazon**smile
You shop. Amazon gives.

Want Amazon to donate to your favorite charity (at no cost to you)?

Pick a char...

No thanks

It only takes a few se...
we'll take you back to

Already selected a charity? Sign in to smile.amazon.com

Have one to sell?    [ Sell on Amazon ]



*Murder in California: The To...*
by Michael McKew
*Sizzling 101 Profiles with Notorious Murder Sites*
Learn more

Ad feedback

## Customers Who Bought This Item Also Bought



Small Sacrifices: A True Story of Passion and Murder (Signet)
› Ann Rule
440
Mass Market Paperback
$7.19



Whatever Mother Says...: A True Story of a Mother, Madness and Murder (St. Martin's True Crime...
Wensley Clarkson
60
Mass Market Paperback

The Stranger Beside Me
› Ann Rule
338
Mass Market Paperback
$8.50

# Exhibit B

June 14, 2002



Ms. Janie Cockrell
Director
Texas Department of Criminal Justice
P. O. Box 99
Huntsville, TX 77342

I am writing to request your assistance in a serious matter. I have exhausted all administrative remedies on my unit in an effort to obtain protective custody.

I currently am housed in Administrative Segregation as a result of an attack in which I was forced to defend myself when on duty officers did not respond to my pleas for help. This is not the first time I've been attacked or threatened. I've reported threats and filed life endangerment forms, all of which have been met with apathy. I feel this apathy and negligence is also prejudice resulting from the negative attention media produced.

My case attracted National Media attention resulting in the publication of the books <u>Blind Love</u> by Peter Meyer and <u>The Cadet Murder Case</u> by A. W. Gray. It also spawned the movie "Love's Deadly Triangle: The Texas Cadet Murder" which airs on both NBC and the Lifetime channel at a frequency of about once every 3 months. The case was twice on the cover of People Magazine in October of '96 and again in March of '98. It was also on the cover of Texas Monthly in '96 and featured in various other magazines including Glamour magazine. My trial was aired on Court TV. from beginning to end nationwide. Interviews and talk shows covered the case some of which were CNN's Larry King Live, Geraldo Rivera, The Leeza Show, Dateline and the Today Show. Prime Time Live featured the case several times as well. Because of all the media attention, I was placed in permanent protective custody in the Tarrant County Jail to avoid problems. I was repeatedly threatened.

The Texas Department of Criminal Justice has not only repeatedly denied me protection but it has allowed the movie to air and be viewed in the dorms I've lived in, denying my requests (and my family's) that it be blocked on my unit. This has caused theft of my property, threats on my life and attacks on my body.

I am in fear of what will occur when I am once again released to general population. I am due for review this October and will likely be released to general population as a result of good behavior. My safety is in jeopardy and I fear for my life once I am sent up to the unit. I am safe and have done well in a cell alone in Administrative Segregation. It is my wish to remain protected.

My unit refuses to see the danger and transfer my custody status from "Security Detention" to "Protective Custody". I plead for your help in this urgent matter. Please, if you can be of any assistance, I would greatly appreciate it.

Respectfully,

Diane Michelle Zamora #814993
1401 State School Road
Gatesville, TX 76599

CC:  Senator Armbrister, The State of Texas
     Representative Hodge, The State of Texas
     Mr. Stringfellow, TDCJ State Board Chairman
     Warden Ament

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE**
INSTITUTIONAL DIVISION

# OFFENDER CORRESPONDENCE

| | | | |
|---|---|---|---|
| TO: | Offender Zamora, Diane<br>TDCJ-ID #814993 | DATE:<br>UNIT: | June 20, 2002<br>Gatesville Unit  (GV/024) |
| FROM: | TDCJ-ID Offender Correspondence Office | SUBJECT: | Life Endangerment Issues |

Your letter to **Ms. Janie Cockrell** was forwarded by that office to the TDCJ-ID Offender Correspondence Office for review and response. We have submitted your letter to the unit warden for consideration, due to the references you made to a possible life endangerment situation.

It is in your best interest to contact the Warden, the Major, the Chief of Classification, or any security staff member on your unit regarding life endangerment claims. This endeavor will guarantee a more timely response to your claims. We rely on the unit administration's professional assessment of your situation and trust they will take appropriate action to ensure your safety.

copy:  file

BJC:bc

# Exhibit C

# TEXAS DEPARTMENT OF CORRECTIONS
## ADMINISTRATIVE SEGREGATION HEARING RECORD

MOUNTAIN VIEW
_AdSeg_

**Unit**

LUCERO, DIANE

**Inmate Name**

872493

**Number**

☐ Security Detention
☑ Protective Custody

Time: _6 30_    Date: _6_

**Hearing Date and Time**

Time: _____    Date: _6/26/02_

**Time and Date Inmate Notified**

Time: _____    Date: _____

**Time and Date of Initial Placement in Administrative Segregation**

---

Was the inmate placed in Administrative Segregation without notice? ☐ Yes  ☒ No. If yes, state the emergency requiring such action: _____

Was counsel substitute appointed? ☒ Yes  ☒ No. If yes, name: _____
date appointed: _1 /02_ , and reasons: (a) literacy, mental abilities, or language; (b) complexity of issues; (c) placement in Administrative Segregation, prior to hearing; (d) inmate request (circle one).
Was inmate, ☐ Yes  ☒ No, or counsel substitute, ☐ Yes  ☐ No, excluded from the hearing during the taking of evidence? If yes, reasons: _no Counsel substitute appointed or needed due to offenders request for Protective Custody_

Inmate Statement: _Offender Lucero stated that she wanted protective custody due to her presence in population would be harmful to her due to the high profile of her case_

If witnesses requested, were any or all excluded ☐ Yes  ☐ No  ☑ N/A. If yes, reason(s): _____

Witness Statement: _n/a_

If documentary evidence was presented, was it excluded: ☐ Yes  ☐ No  ☐ N/A. If yes, reason(s): _____

(Attach documentary evidence whether or not excluded)
Findings of Committee: ☐ Confinement to Administrative Segregation, ☐ Continue in General Population.
If confinement to Administrative Segregation, evidence relied upon and reasons for such confinement: _MV UCC recommend Placement in Administrative Segregation Protective Custody due to her presence in population would pose a threat to her safety_

Special conditions or restrictions required for security purposes: _one 1_

Unit Committee: _____

#872493

**Inmate signature for receipt of final report**    **Date received**

**I-169A (Rev. 9-84)**
White - Bureau of Classification ● Canary - Unit ● Pink - Legal Affairs ● Gold - Inmate

# Exhibit D

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
State Classification Committee (SCC)
**Administrative Segregation**
**Review Hearing Record**

**I. OFFENDER INFORMATION**

*Instructions:* Correctional staff shall complete Section I.a. thru d. and notify the offender at least 24 hours, and no more than two weeks, prior to the administrative segregation committee (ASC) hearing. Correctional staff shall read the 'notification' in Sect. I.e. to the offender and have the offender sign in Sect. I.e. (if the offender refuses, document the refusal). On the hearing date, unit correctional staff shall ensure this form (I-189) and the following documents are available to the SCC: the offender's travel card, the offender's unit file,; necessary computer screens, and appropriate forms (I-169, I-169A and I-201).

a.  Offender Name ___Zamora Diane___    TDCJ # ___814793___  Unit __MV__

b.  **Current Administrative Segregation Category** *[√ either security detention or protective custody, whichever applies]*:

☐ SECURITY DETENTION *(√ each of the following that apply)*:

1. ____ Current escape risk.
2. ____ Threat to the physical safety of others and/or the order and security of the prison.
3. ____ Confirmed member of a security threat group (STG).

☒ PROTECTIVE CUSTODY – Protection from threat of harm by other offenders.

c.  **Type of hearing** *(√ appropriate one):*  ☐ 60-day hearing;  ☒ 180-day hearing;  ☐ Annual hearing *(STG ONLY)*

d.  **Offender Notification**  *[Read (at ➤) to the offender; do not provide a copy]:*

NOTE: Was a certified interpreter used? ☐ Yes ☒ N/A;  If 'yes', who was the interpreter? *(print name):* _____

➤ "You will be scheduled for an  **ASC during the week of** __1-18-15__ . You have the right to attend the hearing, to make a statement, to submit written statements from witnesses, and to submit other documentary evidence."

e.  Offender was notified on: _____ at: __1244__ ;  by: _____
    (Date)           (Time)                    (Print name and rank)
    Offender Signature: _____ ;  Staff Signature: _____

**II. HEARING**

*Instructions:* An SCC member (or designee) shall complete Section II to document the hearing and evidence presented or considered.

a.  Hearing Date/Time: on __11/17/15__, at __1030__ ;  Was the offender present? ☒ Yes ☐ No

b.  Was a certified interpreter used? ☐ Yes ☒ N/A;  If 'yes', who was the interpreter? *(print name):* _____

c.  Was the offender excluded from the hearing during the taking of evidence?  Yes ☐ No ☒

    If 'yes', provide the reason(s): _____

d.  Offender's Statement: _____

    Did the offender provide a written statement? ☐ Yes ☒ No;  (If 'yes', it must be attached).

e.  If witness(es) were requested, were any or all excluded? ☐ Yes ☐ No ☒ N/A;  If 'yes', provide the reason(s):

    _____

    Witness statement: _____

f.  If documentary evidence was presented, was it excluded? ☐ Yes ☐ No ☒ N/A;  If 'yes', provide the reason(s):

*(Note: Attach documentary evidence, even if excluded.)*

g.  Interview with Offender:
    Disciplinary Violations: _____ S3/P6
    Medical Evaluations: _____ yes _____
    Offender/Staff Interaction: _____
    Program Participation: _____ yes _____
    Psychiatric Evaluations: _____ yes _____
    Offender Request: _____
    Other: _____

I-189; pg. 1 of 2 (Rev. 03-2012)    WHITE Classification & Records    CANARY: offender's unit file    PINK: offender

Does know how to resolve conflict

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## State Classification Committee (SCC)
### Administrative Segregation
### Review Hearing Record

*814773*

*Zamora Diane*

**Cont'd.**

### III. COMMITTEE DECISION

*Instructions:* The SCC designee shall complete Section III to document the SCC's decision and the basis for the decision.

a. **SUMMARY of the basis for the SCC's decision:**

- [ ] Escape Risk (ES)
- [ ] History of Multiple Assaults
- [ ] Offender Assaultive
- [ ] Staff Assaultive (SA)
- [ ] Hostage Taker (HS)
- [ ] Defeats Restraints (SR)
- [ ] Weapons Possession (WP)
- [ ] Riot Participation
- [ ] Extortion Activity
- [ ] Sexually Assaultive
- [ ] Serious Bodily Injury
- [ ] Confirmed STG
- [ ] Multiple Administrative Segregation Placements
- [ ] Unresolved Felony Charges (pertaining to current administrative segregation Status)
- [x] Other *(Specify):* Protective Safekeeping
  Has not received any threats ~~except from~~ No threats from outside
  ~~inside~~ No threats from G.P. o/P

b. **DISPOSITION** – The offender shall *(✓one):*

- [ ] Remain on current status until _____.
- [ ] Promote to: _____
- [x] Be released to general population *(Note recommended custody* S3/G2 *):* Recommendation
  - ➤ By transfer? [x] Yes; [ ] No; If 'yes', note the unit: __Hobby__.

c. **SPECIAL CONDITIONS OR RESTRICTIONS** required for security purposes: _____
Manipulative behavior.
_____

d. **REFERRALS** *(✓if any):* [ ] Medical Department; [ ] Psychiatric Department; [ ] STG Officer; [ ] Other *(Specify):* _____

e. Attended by the following staff *(Print name and rank or title and sign initials below):* ___ Dan SCC
   (SCC Representative)*
   W.Fant III _____ ; and ___ N.Williams CUC _____
   (Warden or designee)                    (Other staff, as deemed appropriate)
   - ➤ Was the SCC representative connected via telephone? [ ] Yes; [x] No

### IV. OFFENDER NOTIFICATION OF DECISION

*Instructions:* Correctional staff making the notification to the offender shall complete this section and, provide the offender (either in person or via truck mail) the "pink" copy of this completed hearing record. If the offender is not present at the hearing, the correctional staff making the notification will generally be completing this section with only the "canary" and "pink" copies of the form, as the SCC will keep the original following the hearing.

Offender Notified by: __N.Williams CUC__ ; Staff Signature/Date: __N.Williams 1/18__

(Print Name & Rank/Title)

**I-189; pg. 2 of 2** (Rev. 03-2012)    WHITE: Classification & Records    CANARY: offender's unit file    PINK: offender

# Exhibit E


OCTOBER 21, 1996

# People
### weekly

# TEEN LOVE & MURDER

**They were the pride of small-town Texas—young, in love and bound for Annapolis and the Air Force Academy. Then they confessed to killing her rival**





Young lovers Diane Zamora and David Graham are charged with killing Adrianne Jones, 16 (right)

$2.50 U.S.

43>

CANADA $3.49

0  70989 10227  9

MARCH 2, 1998

# People weekly

PLUS:



**RECOVERING**
**PEGGY FLEMING**
battles breast
cancer



**CONVICTED**
**DIANE ZAMORA**
guilty in
cadet killing

**HAPPY**
**MARIAH CAREY**
enjoys the
single life

## Sharon Stone's
# SURPRISE
# WEDDING

**After a string of turbulent
romances, Hollywood's boldest
blonde gets hitched**

Sharon Stone and new
husband, newspaperman
Phil Bronstein, on their
Feb. 14 wedding day

Case 8:15-cv-00911-DR Document 57-9 Filed 09/02/16 Page 18 of 79

DECEMBER 1996 • $2.95

# Texas Monthly

# KILLER CADETS

Teenage lovers
David Graham
and Diane Zamora
had everything
to live for.
But first,
Adrianne Jones
had to die.

BY SKIP
HOLLANDSWORTH





0 735966 8

18450

12>

Find Movies, TV shows, Celebrities and more...    All

Enjoy unlimited streaming on Prime Video
Includes thousands of titles. Plans starting at $8.99/mo    Start your 30-day free trial

FULL CAST AND CREW  |  TRIVIA  |  USER REVIEWS  |  IMDbPro  |  MORE          SHARE

American Justice (1992– )

# Duty, Honor... and Murder

8.0/10
6

Rate This

TV-PG  |  1h  |  Documentary, Biography, Crime  |  Episode aired 7 October 1999

Season 7  |  Episode 7          Previous      All Episodes (170)      Next



David Graham and Diane Zamora were two teenagers who were intensely devoted to each other during high school and had both joined the U.S Naval Academy in Annapolis. While at the academy, ... See full summary »

**Stars:**  David Graham, Adrianne Jones, Diane Zamora

## Photos

Add an image

Add Image

Do you have any images for this title?

## Cast                                                  Edit

Episode credited cast:

  David Graham          ...    Himself

  Adrianne Jones        ...    Herself (archive footage)

  Diane Zamora          ...    Herself

See full cast »


ad feedback

### Iconic Back-to-School Movies

*The Breakfast Club*

Get ready for the school year with a look back at some classic back-to-school movies. Did your favorites make the list?

View the gallery »

Like    Be the first of your friends to like this.

### Amazon Pilot Season

# THE TRIAL OF DIANE ZAMORA




## Zamora trial

The Diane Zamora capital murder trial is scheduled to begin on Monday and is expected to last three to four weeks. The trial will be at the Tarrant County Criminal Courts Building, Criminal District Court No. 4, Judge Joe Drago presiding.

### THE TRIAL PROCESS

**1. Opening statements** – Attorneys are given a period of time to tell jurors what they believe their evidence will show. The prosecution goes first. Defense attorneys may make their statements at the beginning of the trial or when they present their case to the jury.

**2. Evidence** – Prosecutors present their evidence and then "rest" their case, then defense attorneys do the same. Prosecutors may then call rebuttal witnesses to dispute testimony given by defense witnesses. The defense may then call their own rebuttal witnesses. The process continues until neither side has any additional rebuttal witnesses. The state then closes its case, as does the defense.

**3. Closing arguments** – Attorneys are given a period of time to try to convince the jury what the evidence in the case showed. This is considered by many to be a critical part in the trial. A compelling closing argument often can sway jurors, many legal experts say. The prosecution goes first, followed by the defense. After that, the prosecution has the opportunity to rebut the defense arguments.

**4. Jury deliberations** – If the jury convicts in a capital murder case, it can assess the death penalty. If prosecutors waive the death penalty, which they have in this case, the defendant receives an automatic punishment of life in prison.

In capital murder cases, jurors may also consider a lesser charge during deliberations. If jurors convict the defendant of murder, the trial proceeds to the sentencing phase. Punishment for murder ranges from probation to 99 years in prison.

**5. Sentencing phase** – Prosecutors try to show that the defendant is dangerous, and the defense will present positive information about the defendant, or evidence, if there is any, of a dysfunctional upbringing or other mitigating circumstances.

### OTHER COMMONLY USED TERMS:

**Objections** – Throughout the trial, attorneys will object to a variety of things, including a question being asked by an attorney, an attempt to present evidence or a request to call a particular witness to testify. If the judge sustains the objection, it means the question, or evidence or witness cannot be presented. If the judge overrules the objection, it means the material can be presented.

**Contempt of court** – Contempt of court citations are rare, but a judge can issue one if an attorney blatantly disregards a court order or ruling. The citations carry up to a $500 fine.

# Exhibit F



December 15, 2015


Texas Board of Pardons and Paroles
Attn: Ombudsman
8610 Shoal Creek Blvd.
Austin, Texas 78757


**RE: Diane Zamora #814993**


Dear Ombudsman,

I am writing concerning the apparent attempt of TDCJ to reclassify Diane Zamora #814993 and move her from protective custody to the general population at the Mountain View Unit.

I have served as Diane's Spiritual Advisor for the past fifteen years, and I have consistently visited her on a monthly basis during that time. It is my strong opinion that this move would put her well being in great jeopardy, and I request that this move not be made for that reason.

Due to the high profile of her case, and the movies and documentaries that have not only been made, but continue to air consistently on television, this move would place her in serious physical and emotional danger. Each time one of these programs air, she receives numerous letters from individuals who "look her up" on the Internet. While some of these letters are love letters from men who think they are in love with her, others are just the opposite. I can only imagine the kinds of letters other offenders receive from family members who have friends and loved ones interred at the Mountain View Unit and learn that she is incarcerated there. A search on the Internet also brings up numerous articles, chat rooms, and over venues that host negative opinions and comments on Diane.


Connect Church
PO Box 154317
Waco, TX 767154317

I have served in full-time pastoral ministry for over thirty years, and have also served as a volunteer police chaplain for two local police departments for the past seven years. As a result, I can only imagine the difficulties encountered by the Texas Department of Criminal Justice in the task at hand.  However, I request in doing your duties to the citizens of Texas, that Diane's safety not be placed in jeopardy at the same time.  Thank you for reading my letter and your consideration in this matter.

Sincerely,

**Duane Hoxworth**
**Senior Pastor**
(254) 717-1962
pastorduane@praisetemple.org



February 18, 2016


Joni White, Assistant Director
Classification and Records
TDCJ – Correctional Institutions Division
PO Box 99
Huntsville, Texas 77342-0099

**RE: Diane Zamora #814993**


Dear Assistant Director White,

I am writing concerning the apparent consideration of TDCJ to reclassify Diane Zamora #814993 and move her from protective custody to the general population at the Mountain View Unit.

I have served as Diane's Spiritual Advisor for the past fifteen years, and I have consistently visited her on a monthly basis during that time. It is my strong opinion that this move would put her well being in great jeopardy, and I request that this move not be made for that reason.

Due to the high profile of her case, and the movies and documentaries that have not only been made, but continue to air consistently on television, this move would place her in serious physical and emotional danger. Each time one of these programs air, she receives numerous letters from individuals who "look her up" on the Internet. While some of these letters are love letters from men who think they are in love with her, others are just the opposite. I can only imagine the kinds of letters other offenders receive from family members who have friends and loved ones interred at the Mountain View Unit and learn that she is incarcerated there. A search on the Internet also brings up numerous articles, chat rooms, and over venues that host negative opinions and comments on Diane.

<div align="center">

Connect Church
PO Box 154317
Waco, TX 767154317

</div>

I have served in full-time pastoral ministry for over thirty years, and have also served as a volunteer police chaplain for two local police departments for the past seven years. As a result, I can only imagine the difficulties encountered by the Texas Department of Criminal Justice in the task at hand.  However, I request in doing your duties to the citizens of Texas, that Diane's safety not be placed in jeopardy at the same time.

Thank you for reading my letter and your consideration in this matter.

Sincerely,

**Duane Hoxworth**
**Senior Pastor**
(254) 717-1962
pastorduane@praisetemple.org

# Exhibit G

**From:** Ombudsman <Ombudsman@tdcj.texas.gov>
**Date:** January 11, 2016 4:22:04 PM CST
**To:** "pastorduane@connectwaco.com" <pastorduane@connectwaco.com>
**Subject:** FW: Diane M. Zamora, #814993



# Texas Department of Criminal Justice

**Brad Livingston**
Executive Director

01-0598-06

January 11, 2016

Duane Hoxworth
pastorduane@connectwaco.com

Re:  **Diane M. Zamora, #814993**
     **TDCJ Mountain View Unit**

Dear Mr. Hoxworth:

This is in response to your correspondence received on December 28, 2015, by the Texas Department of Criminal Justustice (TDCJ) Ombudsman Office alleging Offender Zamora's safety will be in jeopardy is she is placed in general population (GP) and you are requesting she remain in

protective custody.

Records do not indicate Offender Zamora has been placed in GP, she remains in protective/safekeeping custody. At this time, Offender Zamora is appropriately housed and assigned to her custody level within her current status.

No further action is required at this time. Thank you for contacting our office with your concerns.

Sincerely,


Emma Guerra, Ombudsman I
TDCJ Office of Ombudsman

CC:    File

Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime
TDCJ Office of Ombudsman · P.O. Box 99 · Huntsville, TX 77342 · Ph (936) 437-4927 · Fax (936) 437-4930 · ombudsman@tdcj.texas.gov
This information is provided to you in accordance with Section 493.016, Texas Government Code, and Agency policy. Confidentiality requirements can restrict some information from being released.

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## INSTITUTIONAL DIVISION

To:    **Duane Hoxworth**
       **Connect Church**
       **P.O. Box 154317**
       **Waco, TX 76715-4317**
       1201 N. I-35, Waco, TX 76705

**Date:**    **03/21/2016**

From:  **D. Ray**
       **SCC Member**

**Subject:**    **Zamora, Diane**
                **TDCJ#814993**

State Classification and Records is in receipt of your correspondence regarding your concern of the removal of protective safekeeping of Offender Zamora, Diane TDCJ# 814993.

Careful consideration is taken for placement and removal of any restrictive custody on offenders. Offenders in protective safekeeping are interviewed by a committee biannually to ascertain if they are having problems or if they have received ▓▓▓ direct or indirect threats either by persons ▓▓▓▓ TDCJ or outside TDCJ. The State Classification Committee member also review the offender file to include current and/or prior offender protection investigations prior to the removal of protective safekeeping.

Review of offender records indicate Offender Zamora is appropriately assigned.

# Exhibit H



**33 Oval Road
London
NW1 7EA
England**

06.30.2016

Hello Diane,

Thank you so much for taking the time to read this letter!

My colleague dropped you a line last year, and I wanted to follow up as we are progressing with a new series. Having read around your case myself, I would very much like to organise an interview with you and Piers Morgan for our UK TV series. I'm a television producer who works for a company called Plum Pictures. We're based in London, England and make television shows for English and US TV channels.

We've filmed in many prisons before – both men's and women's - and also on Death Row. However, I can't even begin to imagine what you have been through with the difficulties of your case, and the years you've already served.

This documentary series is presented by Piers Morgan. You might already know him, but if not, he's interviewed some of the most famous people from the worlds of entertainment and politics – Bill Clinton, Oprah Winfrey, Madonna, Princess Diana and the Dalai Lama – to name a few! He took over Larry King's show on CNN and was a judge on America's Got Talent. Before all this, he was a journalist and editor in England, running some of the biggest newspapers in the country.

Piers is well known for being fair, and a straight talker. He treats everyone with respect and will give you his honest opinion.

We will be airing the series on a TV channel in England called ITV – with shows like X Factor and Britain's Got Talent; it is the biggest channel in the country. Each episode in the series will focus on one woman's story. The aim is to hear each woman tell their story in their own words, to understand what it is like being in prison and how they got to be there.

This is a unique opportunity to share your experience, to say what you want and what you feel is important to capture from your personal story. The plan is to film later this year, but the timing might still change. I would be keen to pick up with you about the series and welcome any questions you might have about taking part.

Many thanks for your time, I really appreciate you reading this letter and hopefully look forward to hearing from you in the coming weeks.

You can reach me at:

**Laura Vaughan**
Plum Pictures
33 Oval Road
London
NW1 7EA
ENGLAND

Alternatively, you can get someone to email me on laura@plumpictures.co.uk

Kind regards,

Laura Vaughan
Producer, Plum Pictures

DIANE MICHELLE ZAMORA 00814993 MV AP   08 ID 163682016  [P 1/1]

**You have received a jpay letter, the fastest way to get mail**

From :  lisa  keane,  CustomerID: 14656943
To   :  DIANE MICHELLE ZAMORA, ID: 00814993
Date : 9/29/2015 5:38:33 AM EST,    Letter ID: 163682016
Location :  MV


Hello Diane

Thank you so much for taking the time to read this letter!

I'm a television producer who works for a company called Plum Pictures. We're based in London, England and make television shows for English and US TV channels. I read about your case and would very much like to interview you for a TV documentary series that we're working on. I've filmed in many prisons before – both men's and women's - and also on Death Row, but can't even begin to imagine what you've already gone through the years you've already served.

The presenter of the programmes is called Piers Morgan. You might already know him, but if not he's interviewed some of the most famous people from the world of entertainment and politics – Bill Clinton, Oprah Winfrey, Madonna, Princess Diana and the Dalai Lama – to name a few! He took over Larry King's show on CNN and was a judge on America's Got Talent. Before this he was a journalist and editor in England for over 20 years running some of the biggest news papers in the country. He's married and now lives in London with his three children. Piers is known for being a straight talker and fair – he'll give you his honest opinion and always treats the interviewee with respect. I told him about your story and he's looking forward to hopefully speaking to you.


The documentary series will be two episodes and shown on a TV channel called ITV – the biggest channel in England with shows like X Factor and Britain's Got Talent. In the series we are looking to speak to a small number of women and have them tell their story of what it's like being in prison and what got them there. It would be Piers interviewing you and we film documentary style so it would give you a unique opportunity to tell your story, say what you want and what you think is important to capture from your personal story. The plan is to film in November 2015 and January 2016, but the timing might still change.

I look forward to hopefully hearing from you and again I really appreciate you taking the time to read this letter! To contact me back you can write to me at:

LISA KEANE
PLUM PICTURES
33 OVAL ROAD
NW1 7EA
UK

Many thanks

Lisa Keane
Series Producer

# Exhibit I



March 7, 2016

Diane Michelle Zamora - TDCJ 00814993
Hobby Unit
742 FM 712
Marlin, TX 76661-4685

Dear Ms. Zamora,

I hope this letter finds you well.

Indigo Films produces award-winning programming for networks like Discovery, History Channel, Travel Channel, National Geographic Channel, and TruTV. We are now in production on a new television series for Investigation Discovery tentatively titled *"We Did It for Love."* The series is about couples whose relationship or desire to be together is a driving force behind the crime.

The series will explore the dynamics of the relationship and the events that led up to the crime that you are incarcerated for. Oftentimes the details that are reported in the news are incorrect or don't tell the entire story. This is an opportunity for you to talk about what happened from your perspective, in your words. Our goal is to give you a voice to share your story.

If you are interested in participating, we will ultimately try to set up an on-camera interview and feature you in one of the hour-long episodes of the show.

If this show sounds like something you might be interested in doing, please write me as soon as possible to let me know. There are still many steps to go through before an on-camera interview can happen, but a necessary first step is getting in touch with you and finding out if you are interested in participating.

*If you are not interested, we'd like to know that as well so we do not send any follow up mail.*

In your letter, please provide me with some information about your relationship with David Graham and the crime that occurred. Also, feel free to send any questions or concerns that you may have so I can try to address them.

Sincerely,

Elisabeth Davis
Producer
Indigo Films
415-735-1705
edavis@indigofilms.com
www.indigofilms.com

Please write to:
**Elisabeth Davis**
**Indigo Films**
**155 N. Redwood Dr., Suite 250**
**San Rafael, CA 94903**

# Exhibit J

DIANE MICHELLE ZAMORA 00814993 HB G1    11 ID:194657511 [P 1/1]

**You have received a _jpay_ letter, the fastest way to get mail**

From : JEN ANTONELLI, CustomerID: 15496671
To   : DIANE MICHELLE ZAMORA, ID: 00814993
Date : 3/16/2016 2:33:13 PM EST,    Letter ID: 194657511
Location : HB
Housing : G1    11


Hi Diane -

My name is Jen Antonelli and I'm a producer on Warner Bros new nationally syndicated show Crime Watch Daily. I'm working on a story about growing up in prison and would like to explore with you the possibility of you sharing your story and experience with our viewers. If you like to discuss this further, I can be reached collect at 313-582-5570 between 9 - 6 pacific, or via mail at:

JEN ANTONELLI
2416 W VICTORY BLVD #573
BURBANK, CA 91506

# Exhibit K

DIANE MICHELLE ZAMORA 00814993 HB G1   11  ID:205038344 [P 1/1]

**You have received a jpay letter, the fastest way to get mail**

From : Karen Schiffman, CustomerID: 16516085
To  : DIANE MICHELLE ZAMORA, ID: 00814993
Date : 5/3/2016 5:34:28 PM EST,   Letter ID: 205038344
Location : HB
Housing : G1   11

ATTN: Diane Michelle Zamora
TDCJ #: 00814993

William P. Hobby Unit
742 FM 712,
Marlin, TX 76661

Dear Diane,

I hope this letter finds you well in spite of circumstances.   My name is Karen Schiffman and I am a producer with Eastern, a New York based production company.

We're currently working on a new docu-series where individuals share personal perspectives about a closed case. In my research efforts to find stories I feel are more than what they appear on first glance, I've been reading quite a bit about you and your life. I was very moved by your story, and your personal journey. So, I wanted to reach out, and see if you would consider sharing your story, in your words, with us in an episode of our new series for Oxygen.

I appreciate and understand the limits on your end, but I have been told by the supervisors in Huntsville we can make this work if you are on board and interested. All we really need at this time is your willingness to participate.  On our end, we're still finalizing details and dates for when this would air.
Please take some time to consider our offer, and let me know if you have any questions.

You can respond to me in writing at:

Karen Schiffman
220 3rd Floor 12th Ave
New York City, NY 10001

Or alternatively, if you have phone privileges, you can call 646.216.8792 and reverse the charges to me- I will accept them.

Again, please let me know if you have any questions, and I'm happy to answer them.  I look forward to hearing from you soon.

All the best,
Karen

# Exhibit L

DIANE MICHELLE ZAMORA 00814993 HB G1    11  ID:198589060 [P 1/1]

*You have received a jpay letter, the fastest way to get mail*

From : Finch Productions, CustomerID: 16363114
To   : DIANE MICHELLE ZAMORA, ID: 00814993
Date : 4/4/2016 6:50:44 PM EST,    Letter ID: 198589060
Location : HB
Housing : G1    11

Hi Ms. Zamora,

My name is Jessica and I am a producer of a new documentary series for Investigation Discovery Channel called "People Magazine Investigates". Each one-hour episode delves into a story written by one of People Magazine's investigative journalists. Our series tries to highlight the human interest side of hard-hitting news with interviews of those involved.

We're currently working on an episode about your case and we would love to interview you for our story. We have read quite a bit of material about this case, but I don't think we've really seen your side of the story in your own words. This would be a good opportunity for you to share your thoughts and feelings as well as clear up any misconceptions you think that people may have about you or the case.

I realize that you may have had negative experiences with interviews in the past, but I wanted to see if more information about our show would be helpful to your decision. As a People Magazine brand, we're not looking for "gotcha" journalism, just straight forward questions that would be on your terms. Lauren, the producer who would be conducting the interview, in addition to producing and writing hundreds of hours of TV has also produced award-winning documentaries. Her interviews are always respectful.

Thank you in advance for your time,

All the best,

Jessica

# Exhibit M

To: State Classification Committee          April 2, 2012

    I am writing because I was informed of the possibility that I was being considered for release to general population this month. It is my request that I not be released to general population because of the many problems I had when I WAS in population and because I feel TDCJ would be placing my safety in jeopardy by releasing me from protective custody. I fear for my life if I am ever sent up to the unit.

    Before I was granted protection, the Texas Department of Criminal Justice had ignored reported threats and life endangerment forms filed. I was attacked on more than one occasion and TDCJ gaurds refused to respond to my pleas for help. I was housed in Administrative Segregation after I was forced to defend myself against an attacker. This negligence of my safety was a result of prejudice from negative media attention.

    My case attracted national media attention resulting in the publication of the books Blind Love by Peter Meyer and The Cadet Murder Case by A.W. Gray. It also spawned the movie " Love's Deadly Triangle: The Texas Cadet Murder" which airs on both NBC and the Lifetime channel at a frequency of about once every 3 months. The case was twice on the cover of People Magazine and made the covers of other magazines such as Texas Monthly and US Weekly. It was featured in Glamour magazine and the tabloids The Globe, The National Enquierer and Star. My trial was aired nationwide with gavel to gavel coverage on Court TV. My case was featured on every major network news channel as well as programs such as CNN's Larry King Live, Geraldo Rivera, The Leeza Show, Dateline and the Today Show. It was covered several times on Prime Time Live and The Montel Williams Show. I was placed in permanent protective custody in the Tarrant County jail to avoid problems because of the excessive media attention.

    The Texas Department of Criminal Justice not only repeatedly denied me protection but allowed the movie to air and be viewed in dorms I lived in, denying my requests (and my family's) that it be blocked on my unit. This caused theft of my property, threats on my life and attacks on my body.

    I filed a civil lawsuit against TDCJ and the unit warden that was dismissed for failure to file my grievance specifically on the issue of protection. After filing my grievances and exhausting administrative remedies, I prepared to file the lawsuit a second time. It was in the midst of this second filing that Huntsville agreed to grant me protection and I was transferred to protective custody.

    Although I have been in protective custody for a while, I still experience harassment of various degrees. The Unit Administration still has a habit of turning a deaf ear to my complaints more often than not. At least, I no longer have to worry that this apathy will result in a physical attack as I worried when I was in population. I have no desire to risk my safety by going to population. Should I be released to population and assaulted once more, TDCJ would be legally liable for jeopardizing my safety. I pray you will vote to remain me in protective custody.

                                          Diane M. Zamora #814993
                                          Mountain View Unit

# Exhibit N

## Judge in Zamora murder case dies

Former state District Judge Joe Drago III, 70, who presided over the high-profile murder trial of Naval Academy Midshipman Diane Zamora, died Friday. He advocated telecasting trials even though he said the Zamora case took a personal toll. **Darren Barbee, 1B**

# Retired District Judge Joe Drago dies

**By Darren Barbee**
dbarbee@star-telegram.com

Former state District Judge Joe Drago III, whose high-profile cases included the love-triangle murder trial of Naval Academy Midshipman Diane Zamora, died Friday at his home in Fort Worth. He was 70 and had battled throat and lung cancer for a decade, his wife said.

Fellow retired Judge Don Leonard said Judge Drago was such a good company that he could "sit down with a bunch of cannibals and just bond."

And he was always there for his family, he balanced the hardness he saw from the bench with a warm and protective love for his family, relatives said.

"A lot of people get to the top of their profession, which is what I consider Dad as a judge," said son Jon Drago, tournament

□ He took his work seriously but took noon naps and sometimes wore a golf shirt under his robe.

**More on DRAGO 6B**

director for the Byron Nelson Championship. "A lot of people that get there abandon their family to do so or aren't able to have a relationship with their family."

His father took time for his family "almost in spite of" the success, he said.

Tarrant County District Attorney Joe Shannon met Judge Drago in the 1960s when he first was a city prosecutor in Fort Worth.

He recalled a fair man who took his job seriously but was relaxed enough to wear a golf shirt under his robes from time to time with it the neck. The judge was known for noontime naps and his old Volkswagen Fox.

"He was ... the kind of a person that you would hope every judge would seek to emulate," Shannon said.

In 2002, the year he retired, Judge Drago won the Silver Gavel Award from the Tarrant County Bar Association.

Yet it was almost not to be, said his wife, Diane.

Joe Drago was one of four children, all of whom worked at their father's hardware store in Port Arthur. He was headed to medical school when he suddenly switched to law at because of a physics course, his wife said.

## Drago
**Continued from 1B**



State District Judge Joe Drago listens to testimony in the murder trial of Naval Academy Midshipman Diane Zamora in 1998.
*Star-Telegram Archives*

said.

"He just decided," she said.

Judge Drago came to the subject of a judge-for-Fort Worth in the mid-1960s after graduating from the University of Texas at Austin. He worked as a city prosecutor and judge in Fort Worth before joining the district attorney's office. There, he headed the county's misdemeanor unit before prosecuting many felony trials for the county, Shannon said.

"Then he got on the bench and did a great job" he said.

Judge Drago was appointed a judge by Democratic Gov. Mark White in 1985 and won elections in 1986, 1990, 1994 and 1998, his wife said. In 1988, he switched to Republican Party.

Judge Drago called the county's first night court into session in 1989.

In 1990, he presided over the trial of Ricky Lee Green, who was convicted of the sex-torture slaying of a Texas Christian's executive.

In 1998, he tried Zamo-

ra, whose case was nationally televised after being the subject of a judge-for-TV movie.

Judge Drago, 69, who said he was emotionally drained by the high-profile case that he asked Leonard to conduct the trial of Zamora's accomplice, Air Force Academy Cadet David Graham, in the killing of her teenage romantic rival, Adrienne Jones. Both Zamora and Graham received life sentences.

"It took me a long time to get over that trial," the stress and the media attention of everybody watching everything you did," Judge Drago said a year later.

Nevertheless, he wrote a 2002 op-ed article urging that trials be telecast "because court cases are the public's business. We should do all we can to let the public see the justice system at work."

For his family, it was the strong father and husband who will be missed. Judge Drago bought his children new cars and drove hand-me-downs himself. He

waited up for his daughter, rarely if ever lost his temper and, when his eldest son went on a date for the first time, followed his son's car to a dance to make sure he arrived safely.

Elder son Joseph Drago, a civil attorney, said little memories welled up in him Saturday as he recalled his father. He remembered playing baseball in high school and his father coming to every game.

One time he stood behind the backstop at home plate, and his son heard him say, "Hit it to right field."

"I hit the next pitch to right field for a triple," he said.

"He was probably one of the most honest people I know," Joseph Drago said. "Everything I learned from him as far as how to act and conduct myself with honesty and integrity."

Jon Drago said his father was "just as comfortable at a dinner speaking to 500 people as he was at a backyard barbecue." He was the type of person "who could fit in no matter what the environment was."

Tarrant County Judge Glen Whitley said it's another loss for the county after the shooting of an Arlington police officer and the recent death of former Tarrant County Judge Tom Vandergriff.

"It's been a tough year so far," Whitley said.

He is also survived by his mother, Josie Drago, his daughter, Sarah Goggans and six grandchildren.

# Exhibit O

Sunday June 12, 2016

Dear Gloria;

After talking to you these past few days, I am in the mood to help Don fight this battle because there is so much hate Against her and Against me. This hate has no limit. About what happen at that hearing, the Warden has made this a personal thing and doesn't care for Don's safety. I am glad that the Govenor is asking for Don's medical records Because it could mean He is looking into her mental state and how not having Protection could after that or He could evaluate that Being where she is at is Okay for now. It could go both ways. I need for you to tell Don that the day after Don left here, the Warden (Nelson) came here in a cheerful mood and told all these 4 inmates in front of officer Turner that Don Would NEVER EVER return to PC and promised Patrona that that would never happen. Don can ask the Judge in the Motion for Re-hearing that Because of this New Evidence, He should reconsider His original order and Allow Don to return to PC. Tell Don she can call me as a witness as well as officer Turner Because officer Turner told me and officer Morales Too About what Warden Nelson said. Don can make the Argument to the Judge that Warden Nelson has a Personal Vendetta Against Don and has placed her in harm's danger. Don Also can put in her Motion that Patrona claimed in front of me and officer Morales that she was the Major's and Warden's Informant and all of this of removing Don from PC was To please Patrona Because Patrona and the Warden have a Personal Relationship which is Against Prison policy. Don can ask the Judge to call all of us as witnesses, since the Warden mentioned my name in that hearing, Don has a Right To fight

Back

This will show the Judge that the Warden is playing with Don's Safety in order to please a few. Many attorneys who file Motions for a Re-hearing have them denied. So Don should not get discouraged if the Judge denies her Motion. There are some Miracles that do happen and maybe one could happen with Don's Motion.

I am working to see if the Attorneys helping me in my criminal case, maybe can help Don. But in the meantime, Don should continue with her Re-hearing Motion. I will keep you updated on what I find out about the Attorneys.

Well, Take Care & God Bless you & your Family.

I leave you in God's hands
May His love Reign in your heart

I love you
God Bless
Yolanda

# Exhibit P

*EMAILED 5/26/16*

# Diane Zamora TDC# 814993 versus the Hobby Unit Marlin Texas



**Gloria Rincon** <mkdivasunit@gmail.com>

11:05 AM (0 minutes ago)

to ombudsman

Attention Ombudsman of TCDJ, My name is Gloria Rincon.  I am writing to request your assistance in a very serious matter.  My daughter Diane Michelle Zamora TDC#814993 Has been in Protective custody for the last 18 years.  The last classification review was done approximately in November and I was told in a letter that my daughter would remain in PC till the next review in 6 months.  At that time she would be reevaluated once again to determine if she would be kept in PC or let up to population.  This did not happen and Diane was moved on 2/23/16 from the Mountainview Unit to the Hobby Unit to general population.  There is a letter in Diane's file from former Deputy Executive Director Janie Cockerel that states that Diane should never be released from Protective custody as long as she remained an inmate of TDCJ.  There are real specific reasons why no one took Ms Cockrell's suggestion into consideration, and I can elaborate at a later time if needed.  My main concern right now is that Diane's safety is being jeopardized.  The officers from the Hobby unit are not taking her

safety seriously and I want this unit to be investigated. The day after my daughter arrived she was attacked by an inmate. The inmate told her, so you are that "naval academy bitch". She kicked her and bruised her and cut her with something that I assume to be a blade according to the marks on her neck. The inmate threatened to find her and "kick her a-- again. When I went to visit her, she was stripped down and Diane said that the officer asked her why she had not reported the attack. Diane says that she told the officer that she did not report this for fear of being called a snitch and this was her first day on the unit. The officer told Diane that they were going to have to investigate. Their so called investigation concluded that Diane had hurt herself. I believe these officers did not want to get in trouble, and this conclusion would look better for the unit. If someone really had investigated they would have seen that there was no way that these injuries could have been caused by her. How could she cause bruises to the back of her legs or cuts behind her neck in such a manner that she was cut. Diane has filed two OPI's and nothing has been done to protect her.

There is an officer on that unit that went around telling inmates that they should be scared of Diane because of her case. There are numerous inmates that could testify to this. This officer was stirring trouble against my daughter. Diane was attacked again this past week by the same girl. I do not have a lot of details, because Diane was placed in transit and she was not able to call me. She called me today and gave me a few details, but again she was afraid to talk to much about what had happened. She said she did not want to worry me, but that she was fine. Diane had a valid reason to fear being released to population, but no one took it seriously. The TDCJ has not only repeatedly denied Diane's protection but it has allowed the made for TV movie about my daughter's case to be aired and viewed in the dorms that she lives in. This alone causes her problems with other inmates.

If this unit is really interested in protecting my daughter they would not have placed her with inmate chanda, who has a long list of attacks on inmates and officers. It is very obvious that they want my daughter hurt. I am pleading to you to please investigate this unit. I have never

dealt with crooked officers like this unit employs.   My daughter is not your typical inmate and she is very intelligent and I guess that is what makes these officers dislike her.  Diane is a very likeable person and I think one of the reasons that she has been attacked is because these officers and inmates don't like that Diane has been in protective custody for all these years.  Diane is good to the inmates that she comes in contact with and once they allow themselves to get to know her, they like her.  I want this matter resolved.  The Hobby Unit and TDCJ is depriving my daughter from the basic human need to be safe from harm.  They are violating her Eight Amendment Constitutional Right against cruel and unusual punishment.    I want a solution as quickly as possible.  I pray that you can do as I have requested and investigate this unit.  There is some unknown reason that my daughter is not being allowed to serve her time as other inmates do, but instead she lives in constant fear of her life.  Thank you for your attention in this matter.

Sincerely,

Gloria Rincon

Diane's mother

# Exhibit Q

# CORRECTIONAL MANAGED CARE
# CLINIC NOTES - NURSING

**Patient Name:** ZAMORA, DIANE M   **TDCJ#:** 814993   **Date:** 02/20/2016 17:12   **Facility:** HOBBY (HB)
**Age:** 38 year  **Race:** H  **Sex:** female
**Most recent vitals from 2/20/2016:** BP: 140 / 65 (Sitting) ; Wt: 167 Lbs.; Height: 61 In.; Pulse: 97 (Sitting) ;
Resp: 16 / min; Temp: 97.9 (Oral)  BMI: 32~>; O2 Sat: 100% RA
*CURRENT* PEAK FLOWS: PF 1: ; PF 2: ; PF 3:
*PRIOR* PEAK FLOWS: PF1 : ; PF 2: ; PF 3:
**DOI:** 2/23/1998
**Allergies:** AMINOGLYCOSIDES, ROTAVIRUS VACCINE/AMINOGLYCOSIDES

| Patient Language: ENGLISH   Name of interpreter, if required: |
|---|

**Current Medications:**

| | | |
|---|---|---|
| **SERTRALINE 100MG TABLET** | ORDERING FACILITY: MT. VIEW (MV) | COMPLIANCE: 92.05 % |
| 2 TABS ORAL EVERY EVENING for 30 Days | ORDERING PROVIDER: MORTON, GARY D | REFILLS: 5 / 11 |
| | | EXPIRATION DATE: 9/17/2016 06:45:00PM |

| IS THIS VISIT THE RESULT OF A SCR? | | YES |
|---|---|---|
| | x | NO |

| | Vital signs within normal limits |
|---|---|
| | Provider notified – vital signs outside of normal parameters as follows: |
| | Blood pressure less than 90/60 or greater than 180/110 |
| | Pulse less than 50/min or greater than 110/min |
| | Temperature greater than 101°F (oral) |
| | Respirations greater than 22/min |

**Today's Problem:**

**S:** injury report

**O:** patient escorted to medical to have an injury report. Patient appears withdrawn. Answers questions slowly but appropriately. She is alert and verbal. She has multiple superficial scratches to the back of her neck. No open areas noted. She has a large dark bruise to her left chest wall near shoulder. She has large dark bruising to her bilateral thighs (anterior and posterior). She has small healing bruises to both of her arms (upper) about the size of a thumb. She has bruising noted to her left buttock cheek. She reports that she was beaten on 2/19/2016 on the ground between central and building 4. She is unable to give a description of the person that injured her. She did state that they were wearing white. She does not know if a sharp object was used. She indicated that she was kicked and beaten while lying on the ground.

She does not complain of any other injuries.  She denies any sexual involvement with this assault.

# CORRECTIONAL MANAGED CARE
## CLINIC NOTES - NURSING

**Patient Name:** ZAMORA, DIANE M   **TDCJ#:** 814993   **Date:** 02/20/2016 17:12   **Facility:** HOBBY (HB)

**Plan is as follows:**   released to security.

Procedures Ordered:

| Date Time | Description | Diagnosis | Comments | Special Instructions |
|---|---|---|---|---|
| 2/21/2016 05:24AM | #NURSING LEVEL 1 COMPLETE VISIT (F) | np - contusions/bites (non-snake) | | |

Electronically Signed by CAMERON-TONEY, VANESSA L. L.V.N. on 02/21/2016.
Electronically Signed by LORNSON, ANNE L. MEd, MHC on 02/22/2016.
Electronically Signed by GINN, CHRISTOPHER W. MS, MHC on 02/22/2016.
Electronically Signed by GAGEN, GINA EdD, LPC-S on 02/23/2016.
Electronically Signed by BOGAN, CAROLYN J. RN, FNP-BC on 02/24/2016.
##And No Others##

# Exhibit R

## DECLARATION OF TIFFANY HARPER, TDCJ-ID #1441723

I am over 21 years of age, of sound mind, capable of making this declaration, and personally acquainted with the facts herein stated.

I gave a statement on 2-21-16 for Diane Zamora's Offender Protection Investigation and wish to clarify such statement. At no time did I ever witness Diane Zamora hit herself or cause herself any harm. This was an assumption I made because I was under the impression that Zamora was trying to accuse Inmate Gwendolyn Greene of attacking her. Greene is well liked in G wing and many inmates felt very protective when officers led us to believe this to be the truth. Witness forms were passed out and there were even inmates who wrote the statements of other inmates so that there would be many witnesses to come to Greene's defense. I now realize that Zamora never accused Greene. I also have never witnessed Zamora solicit anyone in the dorm to harm her but I do know of instances where others DID attempt to solicit Zamora for this purpose and were turned down by her.

I am also witness to the fact that there is currently a book being passed around the dorm about Diane Zamora's case and that this has caused inmate hostility against her and lots of distress for Zamora.

My name is Tiffany Harper, TDCJ-ID #1441723, and I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. Title 28 U.S.C. Section 1748. Signed this 1st day of July, 2016.

Signature of Tiffany Harper

TDCJ-ID #1441723, G Dorm 106T

# Exhibit S

## DECLARATION OF THELMA MALDONADO, TDCJ-ID #1641328

I am over 21 years of age, of sound mind, and capable of making this declaration. I am personally acquainted with the facts herein stated.

I have lived with Diane Zamora since she first moved into G wing on February 18, 2016. I have never witnessed Zamora solicit anyone to harm her and know this to simply be a rumor that doesn't even conform with the character of Zamora. I have also never witnessed Zamora hit or cause herself harm. This is just another rumor that somehow began to stir up drama.

I am also witness that a book that covers Zamora's case is being passed around the dorm and have read the book myself. ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓ Many in the dorm are behaving ugly as a result of reading this book and I believe it to be a threat to Zamora's safety and security. No one else on the unit has their case sitting in a book on the library shelf.

My name is Thelma Maldonado, TDCJ-ID #1641328, and I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. Title 28 U.S.C. Section 1748. Signed this 1st day of July, 2016.

Signature of Thelma Maldonado
TDCJ-ID #1641328, G Dorm 201B

# Exhibit T

## DECLARATION OF VERONICA ALARI, TDCJ-ID #1815330

I am over 21 years of age, of sound mind, capable of making this declaration, and personally acquainted with the facts herein stated.

I have lived with Diane Zamora since she first moved to the Hobby Unit and though it is true that she doesn't like this unit, she has never solicited anyone to harm her to try to leave it. I know that Zamora already will leave the unit for college in the coming semester so that was never the issue. The issue has always been her protection. I also have never witnessed her harming herself and that anyone would say this is odd since we can't see inside eachothers cells unless you go right up to the door. These are just assumptions and untrue.

I can testify that Zamora has been under lots of stress that has caused her to lose lots of weight and that it hasn't helped matters that a ~~book from the ubbrary that contains that case was being passed around the dorm~~. This book's existence on this unit has been causing problems because some people have been ugly towards Zamora about it. I would think that this would be cause for serious safety concerns.

My name is Veronica Alari, TDCJ-ID #1815330, and I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. Title 28 U.S.C. Section 1748. Signed this 2nd day of July, 2016.

Signature of Veronica Alari
TDCJ-ID #1815330, G Dorm 205T

# Exhibit U



# STEP 1

## OFFENDER GRIEVANCE FORM

Grievance # 201611 6198

Date Received: MAR 28 2016

Date Due: 5/7/16

Grievance Code: 812

Investigator ID #: ~~12178~~ 1921

Extension Date: N/A

Date Retd to Offender APR 13 2016

Offender Name: Diane Michelle Zamora          TDCJ # 814993

Unit: Hobby Unit          Housing Assignment: G111B

Unit where incident occurred: Hobby Unit

---

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? I wrote Captain Bailey          When? 3-26-16

What was their response? None at this time.

What action was taken? None.

---

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

I am writing to report the intentional harassment by Ms. Nelson (1st shift) against me. This situation with this particular officer has gotten to the point that it has created an unsafe environment for me within the prison. From the first day she was placed in the dorm with me (Feb. 20, 2016) she has done everything in her power to make my life difficult by going up to inmates in the dorm and asking them, "Aren't you afraid of her? Have you hard about her case?" I've overheard Ms. Nelson say this and have also had inmates in the dorm come up to me to tell me about how she attempted to instigate problems and turn them against me. Other officers have also witnessed her odd behavior. On March 9, 2016, the 3rd shift officers let me out to go to my 6am Law Library pass. I leaned against the door to go outside when Ms. Nelson arrived for 1st shift and scared me by beating on the door and screaming for me to get off the door. She entered and asked where I thought I was going. I told her that I had a 6am pass for the Law Library. She said, "Where you aren't going anywhere!" The 3rd shift officers on duty just looked at her strangely as she yelled, "Have they called out Law Library?" One of the ladies responded that they had just called it and Ms. Nelson snapped, "Well, you still aren't going anywhere until I search you." She hadn't even done a proper shift change yet but she was ready to harass me. I gave her my bed number before I left and she yelled, "I know where YOU live!" When I returned later and again gave her my bed number to check in, she yelled at me again. Her co-worker asked how she knew where I lived and she barked, "She just sticks out!" On March 25, 2016, Ms. Nelson pulled me out for a cell search and ordered me to go to the dayroom. I did as I was told and had left my window open. She entered the cell and began to search. She yelled at me to come to the cell and began to scream at me, "You're not special! You don't get 2 johnnies! You're not going to be getting away with stuff here like you did on Mountain View!" She then ordered me back to the dayroom. Everyone got 2 cereals in their johnnie that morning because there wasn't a peanut butter sandwich in the sack. I only had what the officer handed me at breakfast, no more. She threw my T-shirt and other personal property in the hall as trash allowing other inmates to steal it. Later, she began screaming about a cat and called me to the door again. She yelled, "Did you think I wouldn't find it?! Answer me!" I was so confused and all I could manage was, "I'm sorry." She screamed, "Sorry isn't going to cut it!" I don't know

I-127 Front (Revised 11-2010)          **YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM**          (OVER)

Appendix F

created such a scene that the whole dorm was gathered around watching. 2 girls began to curse at me and I left the bench to avoid drama. One got up to follow me and continue yelling while Ms. Nelson just smiled about it. I already don't go to rec. because I don't feel safe and suddenly, I was afraid to even be in the dayroom of my own dorm. All that yelling and screaming was uncalled for and unprofessional. Throwing away my personal property and trying to create an unsafe environment for me is obvious harassment and an Eighth Amendment violation against cruel and unusual punishment (Hudson v. Palmer, 468 U.S.517, 104S.Ct. 2452). This is one of the many reasons I was in protective custody, because of harassment resulting from my high profile case. Ms. Nelson has made it her personal mission to cause me harm psychologically and with other inmates, jeopardizing my safety in every way she can manage.

Action Requested to resolve your Complaint.

I request that this harassment by Ms. Nelson be investigated and corrected.

Offender Signature: _____ Date: 3-27-16

Grievance Response:

**Your concerns have been investigated. There was no evidence found to support your allegations. Offenders are responsible for their actions which can resort in disciplinary action. No further action warranted.**

**Asst. Warden J. Markum**

Signature Authority: _____ Date: _____

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.

Returned because:     *Resubmit this form when the corrections are made.

- [ ] 1. Grievable time period has expired.
- [ ] 2. Submission in excess of 1 every 7 days. *
- [ ] 3. Originals not submitted. *
- [ ] 4. Inappropriate/Excessive attachments. *
- [ ] 5. No documented attempt at informal resolution. *
- [ ] 6. No requested relief is stated. *
- [ ] 7. Malicious use of vulgar, indecent, or physically threatening language. *
- [ ] 8. The issue presented is not grievable.
- [ ] 9. Redundant, Refer to grievance # _____
- [ ] 10. Illegible/Incomprehensible. *
- [ ] 11. Inappropriate. *

UGI Printed Name/Signature: _____

Application of the screening criteria for this grievance is not expected to adversely Affect the offender's health.

Medical Signature Authority: _____

I-127 Back (Revised 11-2010)

**OFFICE USE ONLY**

Initial Submission        UGI Initials: _____

Grievance #: _____

Screening Criteria Used: _____

Date Recd from Offender: _____

Date Returned to Offender: _____

2nd Submission        UGI Initials: _____

Grievance #: _____

Screening Criteria Used: _____

Date Recd from Offender: _____

Date Returned to Offender: _____

3rd Submission        UGI Initials: _____

Grievance #: _____

Screening Criteria Used: _____

Date Recd from Offender: _____

Date Returned to Offender: _____

Appendix F

# Texas Department of Criminal Justice

## STEP 2    OFFENDER GRIEVANCE FORM

OFFICE USE ONLY

Grievance #: **2016116198**

UGI Recd Date: **APR 19 2016**

HQ Recd Date: **APR 27 2016**

Date Due: **5-29**

Grievance Code: **812**

Investigator ID#: **I2133**

Extension Date: **07/08**

Offender Name: Diane Zamora    TDCJ # 814993

Unit: Hobby (H5)    Housing Assignment: G111B

Unit where incident occurred: Hobby Unit

---

You must attach the completed Step 1 Grievance that has been signed by the Warden for your Step 2 appeal to be accepted. You may not appeal to Step 2 with a Step 1 that has been returned unprocessed.

---

**Give reason for appeal (Be Specific).**    *I am dissatisfied with the response at Step 1 because...*

I am dissatisfied with the Step 1 response because Asst. Warden Markum did not conduct a proper investigation. He states that I am responsible for my actions which can resort in disciplinary action. This is <u>not an appeal of a case</u>. This is intentional <u>harassment</u> by Ms. Nelson. No one in the dorm was questioned about her harassment & Warden Markum never had me questioned either. Inmate Snow, Jiminez G110B, K. Henderson G112 & Inmate Deleon all witnessed Ms. Nelson's harassment as well as how she intentionally brought up my criminal case to them, questioning if they'd seen the movie or read the books in a deliberate attempt to create an unsafe environment for me in the dorm. Warden Markum is condoning this behavior as well as her disposal of my personal property items outside of TDCJ policy guidelines which <u>require a confiscation sheet</u>. Warden Markum is showing <u>deliberate indifference</u> to my safety & to the security on the very unit he helps run. An investigation has not been conducted & needs to be because Ms. Nelson's behavior is extreme & being allowed to go unchecked.

---

I-128 Front (Revised 11-2010)    **YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM**    (OVER)

Appendix G

**Offender Signature:** _____    **Date:** 4 – 17 – 16

**Grievance Response:**

You grievance has been reviewed and noted. There was no evidence found to support your allegation of staff misconduct or that staff acted inappropriate and or discussing your crime. No further action warranted from this office.

                                      T. Brown, ARD July 8, 2016

**Signature Authority:** D. Brown, ARD    **Date:** _____

---

**Returned because:**    *Resubmit this form when corrections are made.*

☐ 1. Grievable time period has expired.

☐ 2. Illegible/Incomprehensible.*

☐ 3. Originals not submitted. *

☐ 4. Inappropriate/Excessive attachments.*

☐ 5. Malicious use of vulgar, indecent, or physically threatening language.

☐ 6. Inappropriate.*

**CGO Staff Signature:** _____

| OFFICE USE ONLY | |
|---|---|
| **Initial Submission** | **CGO Initials:** _____ |
| Date UGI Recd: _____ | |
| Date CGO Recd: _____ | |
| (check one) ___ Screened ___ Improperly Submitted | |
| Comments: _____ | |
| Date Returned to Offender: _____ | |
| **2ⁿᵈ Submission** | **CGO Initials:** _____ |
| Date UGI Recd: _____ | |
| Date CGO Recd: _____ | |
| (check one) ___ Screened ___ Improperly Submitted | |
| Comments: _____ | |
| Date Returned to Offender: _____ | |
| **3ʳᵈ Submission** | **CGO Initials:** _____ |
| Date UGI Recd: _____ | |
| Date CGO Recd: _____ | |
| (check one) ___ Screened ___ Improperly Submitted | |
| Comments: _____ | |
| Date Returned to Offender: _____ | |

**I-128 Back** (Revised 11-2010)                    **Appendix G**

# Exhibit V

FROM TDCJ'S GRIEVANCE OPERATIONS MANUAL

**Staff Use of Slurs / Hostile Epithets Referrals**

*A referral regarding allegations of staff use of slurs or hostile epithets, PD-22 14b, is required according to guidelines set forth in PD-31 "Discrimination in the Workplace." A referral may be identified at any time during a Step 1 or Step 2 offender grievance investigation.*

*Any time an employee admits to using slurs or hostile epithets, or a witness states that they heard another employee use slurs or hostile epithets, the grievance and staff statements are referred to the Human Resources, Employee Relations Intake Department for TDCJ employees only.*

*Contract staff referrals are made as follows: Private Facility Contract Monitoring and Oversight Division (PFCMOD) for private facilities and treatment staff, the Office of Professional Standards for medical staff, and the Windham School District General Counsel's Office for Windham staff.*

9. If an offender alleges that a staff member used slurs or hostile epithets **and** the offender does not state whether any other staff members were present; the grievance investigator is to interview the offender as to the location of where the alleged incident occurred and whether there was anyone else in the area. If there were only offenders in the area, then acquire a written statement from the staff member who the allegations are against. If the staff member states the incident did not occur, then the grievance **is not** referred. If the staff member states the incident occurred, the grievance **is** referred.

10. If an offender alleges that a staff member used slurs or hostile epithets **and** the offender states another staff member was present, this staff member is a witness. The **witness is to be interviewed first** and a written statement acquired. If the witness states the incident did not occur, then acquire a statement from the staff member who the allegations are against. If the staff member also states the incident did not occur, the grievance **is not** referred.

    If a witness states the incident occurred, **the UGI investigation stops.** Do not interview the staff member the allegations are against and refer the grievance and witness statement.

11. Issue Code 811 is documented on grievances that involve staff use of slurs or hostile epithets.

12. The Staff Use of Slurs or Epithets Referral form (Appendix R) is to be completed and taken to the warden who refers to the appropriate department. A completed and signed referral form will be attached to all offender grievances that are referred.

13. Employee information is confidential. Therefore, employee related information regarding a referral such as an intake number, or any related documents are not to be attached to an offender grievance in order to maintain confidentiality.

14. The following response will be provided on grievances that are referred to the appropriate department:

    **"The issue regarding staff use of slurs or hostile epithets was referred to the appropriate Agency Official for investigation."**

15. Outcome Code **"O"**, Referred to Employee Relations for Investigation, was created to apply when:

    * The only issue listed in the grievance is staff use of slurs or hostile epithets.
    * The only issue code applied to the grievance is 811.
    * The grievance was referred to the appropriate department.

Chapter V

# Exhibit W

Captain Sullivan:                                    June 20, 2016

    I come to you today with a most urgent matter that will
require much caution if no one is to be harmed, especially
myself. I fear for my safety and the safety of another girl
in G wing by the name of Veronica Muniz.
    Today, Inmate Muniz let me know that Inmate Lizette Vasquez
had threatened to cut me in the face. I did not hear this threat
myself so told Inmate Muniz that she should write you with
this information. She did so immediately and mailed it out
to you. YOU SHOULD RECEIVE THAT I-60 at the same time as this
letter. Hours later, Inmate Muniz came to me wondering what
she should do because Inmate Vasquez assaulted her by throwing
hot water on her. She said that many in the dorm witnessed
it. I instructed Inmate Muniz on what she would need to do
to report this and warned her that she would likely get sent
to segregation pending an investigation. That isn't appealing
to any inmate so she seemed reluctant.
    Later that evening, I came out to the dayroom and sat at
the back table with Snow Jiminez. Inmate Vasquez came to the
table and boasted about how she spit on inmate Muniz and threw
hot water on her. Jiminez informed her that this wasn't cool
and that she was only going to end up back in cellblock. She
also informed Vasquez that her threats to cut my face had reached
her ears and said, " I'm telling you right now that you aren't
going to touch Diane!" Vasquez said, " I was mad. Besides,
it isn't worth it." Jiminez said, " I don't care if it is worth
it, you aren't laying a hand on her." I said nothing but only
listened.
    I attended evening Ramadan and Vasquez was standing in
line behind me. I tried to make sure my back was never to her
and silently got my chow tray as I listened to her say that
she almost used Inmate Muniz as her ticket to get back to her
wife who is housed on Mountain View in Ad. Seg. She continued
to speak about wanting to get back to this "wife" of hers and
that made me very nervous. I sat at the chow hall table with
her and listened but didn't hold conversation. I did my best
to appear as if I had no problem with her and that none of
this bothered me, including her previous threat towards me.
    I know what getting housed in Ad. Seg. entails. It would
mean that someone will likely get hurt badly. When I got back
to the dorm, I warned Muniz to watch her back carefully. She
is new to the system and didn't understand what I meant by
getting housed. I had to explain that the only thing that
will likely get a person housed other than an escape charge
would be an assault with a weapon. I really don't know what
to do besides write you about this but I fear that anything
you might do would end badly for me. No one yet knows I've
written this to you. The only reason I'm even safe from harm
right now is because Vasquez fears Jiminez. Please, understand
that I don't have much faith in investigations on this unit
thus far. I'm terrified that this letter will only brand me as a
snitch and then I'll have zero protection.

Respectfully,

Diane Michelle Zamora #814993

# Exhibit X

## DECLARATION OF VERONICA MUNIZ, TDCJ-ID #2031708

I am over 21 years of age, of sound mind, capable of making this declaration, and personally acquainted with the facts herein stated.

On June 19, 2016, Offender Lizette Vasquez swore to me that she intended to cut Diane Zamora in the face. I sent word of this threat to Captain Sullivan by truck mail and have not been questioned about this incident at all to this date.

I have lived in G dorm with Diane Zamora since she first arrived on Hobby Unit on February 18, 2016 and have witnessed the hostility of other inmates towards her and how the stress of living under these conditions has caused her to rapidly lose weight. I have also witnessed that there is a book on her case being passed around the dorm from the library.

I happened to be the person who also ate breakfast with Diane Zamora on May 16, 2016 and am witness that there wasn't an officer present on the street the majority of breakfast. The streets are very dark because the only lights face the recreation yards and not the walkways. I left Diane Zamora at the table at breakfast and met her back at the dorm after she was attacked. She told me she was afraid to report it and get sent to segregation all over again but felt she had no choice. I am witness that her distress was very genuine and she told me about the hispanic girl who attacked her. I was never interviewed about this and didn't even know others

had been questioned about the incident.

I have heard lots of rumors but I have never witnessed Diane Zamora solicit anyone to harm her. These rumors were started by Tandra Legar (G102T) who I lived with for a time. She believed that Diane Zamora was trying to harm her lover, Gwendolyn Greene and convinced many in the dorm who did not know Diane that Diane had caused this harm to herself in order to use Greene as a scapegoat.

My name is Veronica Muniz, TDCJ-ID #2031708, and I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. Title 28 U.S.C. Section 1748. Signed this 29th day of June, 2016.

Signature of Veronica Muniz

TDCJ-ID #2031708, G Dorm115B

# Exhibit Y

### DECLARATION OF SNOW JIMENEZ, TDCJ-ID #1717230

I am over 21 years of age, of sound mind, capable of making this declaration and personally acquainted with the facts herein stated.

On June 20, 2016, I was made aware of a threat from Inmate Lizette Vasquez, TDCJ-ID #1741221, that she intended to cut Diane Zamora in the face. I assured Zamora that I would allow no such thing to happen to her after Inmate Vasquez admitted to this threat in front of me. I know that this incident was reported to Captain Sullivan of the Hobby Unit but he has not questioned me to this date nor has any investigation ever taken place. The incident has been completely ignored.

I am also witness that there is a library book about Zamora that is making its rounds on Hobby Unit and in the very dorm we live in. This book is marked so that everyone will know where Zamora lives and has been causing problems in the dorm for Zamora. She is the only one I know of on this unit that has a book in the library.

Though Zamora has been the subject of lots of gossip and rumors, she has never solicited anyone in the dorm to harm her and has never attempted to harm herself. I've lived with Diane Zamora since she first arrived on the Hobby Unit and know these things to be true to the best of my knowledge.

My name is Snow Jimenez, TDCJ-ID #1717230, and I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. Title 28 U.S.C. Section 1748. Signed this 1st day of July, 2016.


Signature of Snow Jimenez
TDCJ-ID #1717230

# Exhibit Z



**Texas Department of Criminal Justice**

OFFICE USE ONLY

Grievance #: _____

Date Received: _____

Date Due: _____

Grievance Code: _____

Investigator ID #: _____

Extension Date: _____

Date Retd to Offender: _____

## STEP 1    OFFENDER GRIEVANCE FORM

Offender Name: *Diane Zamora*    TDCJ # *814993*

Unit: *Hobby Unit*    Housing Assignment: *3G111B*

Unit where incident occurred: *Hobby Unit*

---

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? *I sent an I-60 to Warden Markum*    When? *6-16-16*

What was their response? *none*

What action was taken? *none*

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

*On 6-15-16, I went to the library to check the True Crime Secti after multiple inmates informed me that a book on my case was being passed around the unit. 2 books have been published on my case, Blind Love by Peter Meyer and The Cadet Murder Case by A.W. Gray. Additionally, my case has been covered in other compila by author Ann Rule and People Magazine. While I do not know wha books on my case may have been in the library but checked out, I did find True Crime Stories from the files of People (364.1 TRU) (HB-436033-7-13) which covers my case on pages 12-13. I h already been vandalized with graffiti to include my housing loca for any inmate who should care to seek me out. This book is copyrighted 2012 but appears much older from frequent checkouts. No other inmate on this unit has to endure being sin out and having inmates check out books on their criminal case. It places me in a dangerous, vulnerable position that is a threat to my safety. I have no hope of anonymity and put my housing location out like that is painting a huge target on my head.*

---

I-127 Front (Revised 11-2010)    YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM    (OVE

JUL 0 5 2016

...on Requested to resolve your Complaint.

*I request placement in protective custody.*

...nder Signature: _Diana Zamora_                    Date: 6-21-16

...vance Response:

...ature Authority: _____    Date: _____
...are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response.
...the reason for appeal on the Step 2 Form.

...ned because:          *Resubmit this form when the corrections are made.

Grievable time period has expired.

Submission in excess of 1 every 7 days. *

Originals not submitted. *

Inappropriate/Excessive attachments. *

No documented attempt at informal resolution. *

No requested relief is stated. *

- Malicious use of vulgar, indecent, or physically threatening language. *

The issue presented is not grievable.

Redundant, Refer to grievance #_____

). Illegible/Incomprehensible. *

. Inappropriate. *

Printed Name/Signature: _Deborah Salsiccia_
                        _Deborah Salsiccia_
                        AGI

...ication of the screening criteria for this grievance is not expected to adversely
...t the offender's health.

...ical Signature Authority: _____

...Back (Revised 11-2010)

| OFFICE USE ONLY | |
| --- | --- |
| Initial Submission    UGI Initials: _RS_ | |
| Grievance #: _2016171776_ | |
| Screening Criteria Used: _88_ | |
| Date Recd from Offender: JUL 0 5 2016 | |
| Date Returned to Offender: JUL 0 5 2016 | |
| 2nd Submission    UGI Initials: _____ | |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |
| 3rd Submission    UGI Initials: _____ | |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |

Appendix F